## Case No. 17,776.

**WILMER v. ATLANTA & R. AIR LINE RY. CO. et al.**

[2 Woods, 447.] [1]

Circuit Court, N. D. Georgia. Sept. Term, 1875.

RAILROAD FORECLOSURES—BONDHOLDERS' BILL—PARTIES—DEFAULT IN INTEREST—JURISDICTION OF COURT—APPEAL BOND.

1. Where certain bondholders whose bonds were secured by a deed of trust filed in behalf of themselves and all other bondholders whose bonds were secured by the same deed, who chose to come in as complainants and bear their share of the expenses of the suit, a bill against the trustees named in the deed, to have the trust administered and the trust property sold and its proceeds distributed, and the other bondholders were numerous and some of them unknown: *Held*, that it was not a valid objection to the making of a decree in accordance with the prayer of the bill, that all the bondholders were not made actual parties; they might be allowed to come in as complainants, or might propound their claims before the master.

[Cited in McFadden v. May's Landing & E. H. C. R. Co., 49 N. J. Eq. 185, 22 Atl. 935.]

2. A trust deed, executed by a railroad company to secure bondholders, construed.

3. Where a railway is conveyed by a trust deed or mortgage to secure bonds, and it cannot be divided and sold in pieces without manifest injury to its ·alue, the whole may be sold before the principal is due, on default in the payment of interest.

4. If two railroad corporations, created by different states, join in making a trust deed conveying their joint property to secure bonds issued by them jointly, and suit is brought to enforce the trust in the district where one of the corporations resides, and it is served with process, and the other corporation, being a nonresident of the state or district where the suit is brought. enters its appearance and files an answer jointly with ·the other, both will be bound by the decree of the court.

5. The Atlanta & Richmond ·Air Line Railway Company conveyed to trustees by a single deed all its line of road extending from Atlanta, Georgia. through South Carolina to Charlotte, North Carolina, to secure the payment of a series of bonds issued by the railway company, and the railroad was an indivisible and inseparable piece of property which could not be divided without injury to its value: *Held*, that the court had jurisdiction to decree that the trustees should sell the entire line of road. according to the terms of the trust, notwithstanding a large part of the road lay beyond the territorial jurisdiction of the court; and that a sale and deed under such decree

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

would convey a good title to the whole property.

6. Penalty of bond for appeal fixed under rule 32 of the supreme court.

See Wilmer v. Atlanta & R. Air Line Ry. Co. [Case No. 17,775]. Before the final hearing, the receiver appointed by this court succeeded in obtaining possession of so much of the trust property as lay within the state of Georgia without the aid of the court. At the September term, 1875, the cause came on for final hearing before WOODS, Circuit Judge, upon the pleadings, evidence and report of the master. In the meantime, Mr. L. E. Bleckley, who was originally of counsel for complainants, had been appointed a judge of the supreme court of Georgia. His place was supplied by Mr. H. R. McCay.

Mr. McCay, A. T. Akerman, and O. A. Lochrane, for complainants, with whom appeared P. H. Butler, as of counsel.

H. H. Marshall, John Collier, and P. L. Mynatt, for defendants.

WOODS, Circuit Judge. The substance of the bill having been stated in the opinion given in this case upon the motion for the appointment of a receiver [Case No. 17,775], it is unnecessary here to recapitulate its averments. The company known as the Atlanta & Richmond Air Line Railway Company, and the same which is made defendant to the bill of complaint, answers the bill and admits the averments thereof as to the legislation of Georgia, South Carolina and North Carolina; admits the union of the said "Georgia Air Line Railroad Company" and "The Air Line Railroad Company in South Carolina," under the corporate name of the Atlanta & Richmond Air Line Railway Company, which is the name of this defendant, and that this defendant now possesses and has since said union possessed all the property of the said two railroad companies, including the line of road extending from Atlanta, in Georgia, to Charlotte, in North Carolina. The defendant company exhibits what it calls the "agreement of union or consolidation," and prays that it may be taken as a part of its answer. The answer of the defendant company also admits that, under the name of the Atlanta & Richmond Air Line Railway Company, it issued the bonds mentioned in the bill, and to secure the same, principal and interest, executed upon its entire property and line of road extending from Atlanta to Charlotte, the deed of trust mentioned in the bill of complaint, and a copy of which is appended thereto as an exhibit. The answer of the defendant company further admits the averments of the bill to the effect that "said railroad with all its appurtenances is in the nature of an entirety; that it constitutes one and a continuous line of railway from Atlanta to Charlotte; that its unity and continuity are the most important elements of its value, and that to separate it from its appurtenances, or those from it, or any part from any other part, would greatly impair the whole." Answers have been filed to the bill by the trustees, Austill and Lancaster, admitting generally its averments. An amendment has been filed to the bill making Samuel B. Hoyt, Wm. A. Russell, B. Y. Sage and T. S. Garner parties defendant, and making certain allegations and charges against them which it is unnecessary, particularly, to state. These new defendants have also answered the bill. The Richmond & Danville Railroad Company and the United States Security Company were also made defendants, and it was alleged that they claimed to have some lien upon the property of the defendant railroad company, but that the same was inferior to the lien of the complainants. A decree pro confesso has been taken against these last named defendants for want of an answer. At the March term, 1875, of this court, Julius M. Patton was appointed a special master to report, among other things, the number, character and description of the outstanding bonds of the defendant, the Atlanta & Richmond Air Line Railway Company, the amount of interest due on the same, the names of the present holders, and description of the bonds held by each. The master has filed his report, in which he states that 4,248 first mortgage bonds of $1,000 each were issued and negotiated by the Atlanta & Richmond Air Line Railway Company. He reports that twenty-one of these bonds are held and owned by the complainants Wilmer and Richard, 4,095 by other persons, whose names and the number held by each he gives. All these bonds were presented to and counted by the master. On the first day of July, 1875, there was due for interest on the 4,116, so presented to and reported by the master, the sum of $658,565, not including any interest on the coupons due and unpaid. This report was filed on the 16th day of August, and has not been excepted to.

The complainants produce the original deed of trust, and the report of the master, and pray for a decree, declaring that by the true construction and intent of said deed of trust the trustees therein named have the right and power, and it is their duty under the facts set forth in the bill, to take possession of the entire trust property and sell the same for the purpose of paying off the principal as well as the interest of the bonds thereby secured, and that they may be compelled to execute said trust accordingly, and according to the directions of the deed of trust, by taking possession of and selling all the property covered thereby, at public outcry, in the city of Atlanta, for the purpose of paying off both the principal and interest of said bonds.

Objection is made to any such decree by the Atlanta & Richmond Air Line Railway Company, and other defendants.

1. It is objected that the decree moved for cannot be made until all the persons entitled

to participate in the fund raised from the sale of the property are made parties to the proceedings, and that such persons so interested have not yet been made parties. The answer to the objection is found in the 84th equity rule, which provides: "Where the parties on either side are very numerous, and cannot, without manifest inconvenience and oppressive delays in the suit, be all brought before it, the court in its discretion may dispense with making them all parties, and may proceed in the suit, having sufficient parties before it to represent all the adverse interests of the plaintiffs and the defendants, in the suit properly before it. But in such case the decree shall be without prejudice to the rights and claims of the absent parties." This case is the very one provided for by this rule. Here are four thousand bonds payable to bearer, secured by the deed of trust, to enforce which is the purpose of the suit. Necessarily the parties interested in the fund to be recovered by a sale must be very numerous, and many of them must be unknown. To require all of them to be made actual parties, and in case of the death of any, that the suit should be revived in the name of the personal representative of the deceased party before any final decree could be rendered, would be to deny the bondholders any relief in this court. The course and practice of courts of equity are not so exacting and oppressive. The rule and the general equity practice provide that the case may proceed when the court has sufficient parties before it to represent all the adverse interests of the plaintiffs and defendants. There is no complaint here that any interest except that of the bondholders who are not parties is not represented. But the interests of all the bondholders are represented: 1st by those who are actual parties complainant; and 2d by the trustees of the trust deed who are made the defendants. The trustees were expressly appointed to represent the bondholders, and if the suit had been brought by them, it would not have been necessary to make all the bondholders complainants or defendants. The course is to file the bill in behalf of all who choose to come in as complainants and bear their share of the costs of the suit, or allow them to propound their claims and interest before the master. 2 Redf. R. R. 486; 2 Redf. Am. R. Cas. 692. (30; Campbell v. Railroad Co. [Case No. 2,366]. This has been the course pursued in this case, and I am clear that all the parties necessary to the decree asked are before the court.

2. The next objection to the decree prayed for is, that there can be no sale of the trust property or any part of it, to pay either the principal or interest of the bonds, until the year 1900, when the principal of all the bonds is due. One of the solicitors for the defendants, however, admits that there may be a decree for interest in default and a sale of so much of the property covered by the deed of trust as is necessary to pay the interest due, but insists that no more can be sold.

The terms of the deed of trust ought to be very clear to justify the court in holding that there could be no sale, even for interest, until the year 1900. Here are bonds to the amount of $4,248,000, bearing eight per cent. interest, payable semi-annually, and due as to principal in thirty years. The property covered by the deed of trust to secure these bonds is not estimated to have cost over $7,000,000. If no interest were paid until the maturity of the bonds, the principal and interest would then amount to over $20,000,000, calculating interest on the coupons as they mature. For this vast sum the bondholders would have a security on property which only cost $7,000,000. In the mean time, during nearly the life of a generation, the railway company would hold the money of the bondholders, and, although it had agreed to pay interest semi-annually, could refuse to comply with its contract, and the bondholder would be without any effectual remedy. I do not believe there is a railroad company so bold, as to ask a loan of money on a deed of trust which could bear such a construction, or a capitalist so foolish as to grant the loan.

There are certain expressions in the deed of trust which give some faint color to the theory under consideration, but there are other clauses which indicate a contrary purpose most unmistakably. The trust deed declares explicitly that, "should default be at any time made in the payment of any part, either of the accruing interest or of the principal sum secured to be paid by any bond or bonds issued under the authority aforesaid," the trustees shall take possession of the property mentioned in the deed of trust, and proceed to sell the same at public auction in the city of Atlanta, and shall apply the net proceeds of the sale in the payment of the interest due on the bonds, and to the extinguishment of the principal of such of the bonds as may then be due. It seems to me that this provision of the trust deed completely overturns the idea that there can be no proceeding for a sale of the trust property, or any part of it, until the maturity of the principal of the bonds. One of the solicitors of defendants, while not agreeing with the construction of that deed just noticed, insists that until the bonds mature there can only be a sale of so much of the trust property as may be necessary to discharge the interest due and unpaid. But in the view I take of the case it is unnecessary to pass upon this dispute. It is clear to my mind, and it is conceded by one of the solicitors for defendants, that there may be a sale of trust property sufficient to satisfy the interest due and unpaid.

On the other hand, complainants insist that a default in the payment of interest makes both principal and interest due, and that the court should order a sale for the whole amount of both principal and interest. Without going into a critical examination of the language

of the deed of trust, I content myself with saying that it seems very clear that when the interest is in arrear, the trustees may sell the entire trust property. The trust deed seems to contemplate but one sale, and on such sale, a full and complete settlement of the trust.

Conceding, then, that there must be a sale to pay the interest due and unpaid, the question arises, Should there be a sale of the entire trust property, or only a part of it? I think this question is settled by the averment of the bill admitted by the answer of the defendant railroad company, and nowhere in the pleadings denied, that the railroad with its appurtenances is in the nature of an entirety, and constitutes one and a continuous line, and that its unity and continuity are the most important elements of its value, and that to separate any part from any other part would greatly impair the whole. This averment of the bill is not only admitted by the answer of the defendant company, but there is not a scrap of evidence in the record to show that it is not entirely true. And, as a general rule, it must be evident that to cut up a railroad and sell it piecemeal would destroy its value. While a sale of a particular part might be made, in some cases, without serious detriment to the part sold; yet from that fact, it would by no means follow that the residue would remain uninjured. That where a mortgage or deed of trust is given to secure the interest and principal of notes or bonds, and the mortgaged property cannot be sold in parts without injury to its value, the whole may be sold on default of the payment of interest before the principal is due, is sustained by the following authorities: Salman v. Clagett, 3 Bland, 125, and other cases there cited; Seaton v. Twyford, L. R. 11 Eq. 591; Dunham v. Railway Co., 1 Wall. [68 U. S.] 254; Olcott v. Bynum, 17 Wall. [84 U. S.] 44; Pope v. Durant, 26 Iowa, 233.

Upon the case as presented, I am therefore of opinion, if any part of the road is sold, the whole may and should be sold. If a sale of the whole is made, it will be then time to consider what shall be done with the proceeds. That is a question which, it seems to me, does not, under the practice of courts of equity, present any grave difficulty.

It is objected to a sale of the whole property of the defendant railroad company that the property is owned by two distinct corporations, one of which, a resident of South Carolina, owns the property of the railroad in that state, and that there can be no merger of railroad corporations extending through several states which will so destroy their individuality as to confer on the united corporation all the franchises of the several parts; that a corporation cannot be chartered by two states so as to have a common individuality in both. The inference drawn from this proposition is, that this court can only order a sale of the railroad property in Georgia which is owned by the Georgia corporation, which alone is a party defendant to the bill, and that the

court cannot order a sale of the property in South Carolina, which is owned by a distinct corporation which is not before the court. It would seem to be a sufficient reply to this proposition to say that the Atlanta & Richmond Air Line Company has answered, admitting the union and consolidation of the two companies into one company, has contracted as one and not as two companies, has issued bonds and secured them by a deed of trust as one company, covering its entire line of road and property, and has agreed that the whole might be sold by one sale, at Atlanta, in the state of Georgia. Even if this proposition of defendant's solicitor were true, we think the facts would estop the South Carolina company from setting up its separate existence and separate property, and we think that it has, by the answer of the Atlanta & Richmond Air Line Company, entered its appearance in this cause. But is it true that a corporation cannot be chartered by two states so as to make one and the same corporate body? When this case was up on motion for the appointment of a receiver, I passed upon this question, and held that two states might, by concurrent legislation, unite in creating the same corporate body. It is unnecessary to repeat what I then said. See Railroad Co. v. Maryland, 10 How. [51 U. S.] 376; Railroad Co. v. Harris, 12 Wall. [79 U. S.] 92.

Counsel for defendants refer to the following cases as establishing the doctrine upon which they rely: Ohio & M. R. Co. v. Wheeler, 1 Black [66 U. S.] 286; Marshall v. Baltimore & O. R. Co., 16 How. [57 U. S.] 325; Railway Co. v. Whitton, 13 Wall. [80 U. S.] 270; Tomlinson v. Branch, 15 Wall. [82 U. S.] 460; Railroad Co. v. Jackson, 7 Wall. [74 U. S.] 262; Delaware Railroad Tax Case, 18 Wall. [85 U. S.] 206. I have examined these cases and cannot find in them anything to overturn the positive declaration of the court in Railroad Co. v. Harris, supra. On the contrary, Delaware Railroad Tax Case, supra, strengthens the view of the court in that case. I am of opinion, therefore, that the Atlanta & Richmond Air Line Railway Company is one and the same corporation, both in Georgia and South Carolina, and that this one corporation is properly before the court.

But concede that there are two corporations under the name of the Atlanta & Richmond Air Line Railway Company, one created by and residing in Georgia, and the other created by and residing in South Carolina. It is made perfectly clear by the pleadings and evidence that these two corporations, if there be two, have joined under their common name in executing the bonds and deed of trust in the bill mentioned, over the common property of the two corporations. Now the Georgia corporation has been served with process and is before the court, and the South Carolina corporation has entered its appearance, and both the corporations have united in a common answer to the bill. The

court, therefore, has jurisdiction over both; for while the South Carolina corporation, if it exists as a distinct corporate body, has the right to demand that it shall be sued only in the district where it resides or is found, it may waive this right and enter its appearance as a defendant in any district it pleases. Northern Indiana R. Co. v. Michigan Cent. R. Co., 15 How. [56 U. S.] 242. It has appeared in this court in this cause as a defendant, and it therefore may be bound by its decree.

It is further insisted by the defendants' counsel that as a large part of the property covered by the deed of trust is beyond the territorial jurisdiction of this court, we are without power to order the sale. The paper executed by the Atlanta & Richmond Air Line Railway Company is a deed of trust to trustees, conveying to them all the railway and other property of the company, with power to sell the whole at the city of Atlanta, in the state of Georgia, if default should be made in payment of interest or principal. Now it cannot be seriously contended that these trustees could not without the aid of this court, by following the direction of the deed of trust, have sold the entire line of the defendant company's road and have conveyed a good title to the whole, extending as it does from Atlanta to Charlotte. Is the power of the trustees any less, because this court has been asked to construe the deed of trust and to order them to execute the trust? If the trustees, under the direction of this court, sell the whole road, they do so by virtue of the power vested in them by the deed of trust. We are not asked to foreclose a mortgage. We are not asked to confer on the trustees any power which they do not already possess, by virtue of the deed of trust, or to impose upon them any new duties, but simply to tell them what their powers are under their deed, and require them to exercise their powers for the benefit of the cestuis que trust. The complainants may, by reason of obstacles existing in the other states through which the railroad runs, be compelled to file ancillary bills in those states; nevertheless, I think it is proper and that this court has jurisdiction to order in this case a sale of the entire line of road.

I think what has just been said is an answer to the argument, that under the Code of Georgia, a mortgage can only be foreclosed when the entire principal or an installment of it is due. No foreclosure is asked here. The complainants seek only to exercise what they think to be their rights under the deed of trust, by a sale according to the terms of the trust deed. The conclusions I have reached are the following:

1. That the Atlanta & Richmond Air Line Railway Company, whether it is a single corporation or two corporations of that name, is properly before this court.

2. That it is the meaning of the deed of trust, that the road of the company, or so much as may be necessary, may be sold to pay interest coupons due and unpaid, without waiting for the maturity of the bonds.

3. That the road is an entirety and cannot be sold piecemeal without injury to the value of the road, and therefore the entire road may and should be sold.

4. That the trustees, by virtue of their power under the deed of trust can, by the direction of this court, sell the entire road lying in three states, and convey a good title to the whole.

5. That the trustees ought to be required to make the sale in accordance with the directions of the deed of trust.

6. When the proceeds of the sale are brought into the court, the court will direct how the residue, remaining after the payment of the interest due, shall be disposed of.

In accordance with the foregoing opinion, a decree was made by which there was a finding of the amount of interest due and unpaid, and the trustees were ordered to sell at Atlanta, Georgia, in the manner, and after the notice prescribed by the trust deed, the entire line of the defendant company's road, extending from Atlanta to Charlotte, North Carolina.

The Atlanta & Richmond Air Line Railway Company prayed an appeal from this decree to the supreme court of the United States, which was allowed, and the penalty of the appeal bond was fixed at $800,000. This sum was arrived at as follows: It was made to appear that the property conveyed by the deed of trust would not probably sell for more than the principal and interest owing upon the bonds at the date of the decree, and that the cause would remain pending in the supreme court at least two years before final hearing, and that the interest which would accrue upon the bonds during that time would amount to a little more than $798,000. Under rule 32 of the United States supreme court (6 Wall. [73 U. S.] v.), the penalty of the bond was therefore fixed at $800,000, and it was ordered that upon the execution by the appellant of a bond in that sum, with sureties to be approved by the clerk, the appeal should supersede the execution of the decree.